# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John L. Michaud,

                Plaintiff,

       v.

Officer Keith Demarest, The City
of Mounds View, Ramsey County,
Deputy Sheriff J. Lopez, and
Deputies Adam Moore, Steven
Engstrom, David Kernal, William
(Bill) Burkhart, Jonathan Hayden,
Steven Neily, Joseph Kubisewski,
Noah LaBathe, Nicolas Heininger,
Michael Frank, Norman Thurmer,
Reed Rediske, Duane Renville, Neil
Iverson, Corey Hendrickson, and
Deputies John Doe, Jim Doe and
Fred Doe,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-4362 ADM/JSM

---

Richard W. Hechter, Esq., Thill Law Firm, P.A., St. Louis Park, MN, on behalf of Plaintiff.

Jason M. Hiveley, Esq., Iverson Reuvers, Bloomington, MN, on behalf of Defendant Deputy Sheriff J. Lopez.

Karen A. Kugler, Esq., Ramsey County Attorney's Office, St. Paul, MN, on behalf of Defendants Ramsey County and Deputies Moore, Engstrom, Kernal, Burkhart, Hayden, Neily, Kubisewski, LaBathe, Heininger, Frank, Thurmer, Rediske, Renville, Iverson, Hendrickson, and Doe.

---

## I.  INTRODUCTION

On May 29, 2008, the undersigned United States District Judge heard oral argument on

the Motions for Summary Judgment [Docket Nos. 46, 48] of Defendants Deputy Sheriff J. Lopez

("Deputy Lopez"), Ramsey County (the "County"), Deputies Adam Moore, Steven Engstrom,

David Kernal, William (Bill) Burkhart, Jonathan Hayden, Steven Neily, Joseph Kubisewski,

Noah LaBathe, Nicolas Heininger, Michael Frank, Norman Thurmer, Reed Rediske, Duane Renville, Neil Iverson, Corey Hendrickson, and Deputies John Doe, Jim Doe and Fred Doe's (collectively the "Deputy Defendants").  Defendants' Motions are granted in part and denied in part.

## II.  BACKGROUND[1]

The factual context of this case occurred after the stop and arrest of Plaintiff John L. Michaud ("Michaud") by Ramsey County deputies and Mounds View police officers in the early morning hours of February 27, 2005.  Demarest Dep. (Hiveley Aff. [Docket No. 52] Ex. C) at 17, 24.  Michaud had departed for home from a party where he had consumed alcohol and possibly smoked marijuana when Officer Keith W. Demarest ("Officer Demarest") of the Mounds View Police Department stopped him for speeding and erratic driving.  Id.  Michaud Dep. (Hiveley Aff. Ex. B) at 64, 67-68.  On an audio recording Michaud can be heard questioning Officer Demarest regarding the stop and yelling at the officers.  Audio Recording (Kugler Aff. [Docket No. 54] Ex. E).

Ramsey County Deputy Sheriff Lopez, who was on patrol in the nearby Arden Hills area, went to assist Officer Demarest after learning of the stop by the radio transmission.  Lopez Dep. (Hively Aff. Ex. A) at 33.  When Deputy Lopez arrived at the scene, Michaud and Ry Hutchinson ("Hutchinson"), Michaud's friend and passenger in his car at the time of the stop, were each handcuffed and seated in the back of two Mounds View squad cars.  Id. at 39, 43.  Shortly after Deputy Lopez arrived, the officers transferred Michaud to Deputy Lopez's squad

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

car for transport to the Ramsey County Law Enforcement Center ("LEC").   Demarest Dep. at 47-48.

Officer Demarest asserts Michaud was compliant with his initial command to exit the vehicle and the handcuffing procedure.   Id. at 37-40.   However, Officer Demarest testified that while transferring Michaud to Deputy Lopez's squad car, Michaud attempted to kick the officers and yelled at them.   Id. at 49.   Deputy Lopez, however, testified that he did not hear any yelling or screaming when he arrived at the scene and was never informed by Officer Demarest that Michaud had threatened or attempted to kick the officers.   Lopez Dep. at 44-45.   Michaud admits he yelled before being placed in Deputy Lopez's squad car.   Michaud Dep. at 108.

When Deputy Lopez left the scene, he contacted dispatch to inform them he was transporting an individual to the LEC.   Lopez Dep. at 59.   According to Deputy Lopez, Michaud exhibited serious mood swings during the fifteen to twenty minute drive to the LEC, alternating from being verbally assaultive to apologetic.   Lopez Dep. at 58, 68.   Deputy Lopez testified that about ten minutes after he left the scene, Michaud vomited in his squad car.   Id.   Deputy Lopez's squad car was equipped with a plexiglass sliding window that separated the front and backseat areas.   Id. at 64.   Deputy Lopez had left the window divider slightly open and some of Michaud's vomit passed through the open portion of the plexiglass divider and spilled onto Deputy Lopez and his equipment.   Id. at 68-70, 152.   Deputy Lopez believes Michaud intentionally moved close to the opening in the divider and threw up without warning so that vomit would spray on Deputy Lopez.   Lopez Dep. at 150.   Further, Deputy Lopez contends that Michaud looked at him after vomiting and said "How do you like that, pig motherfucker?"   Id.   After Michaud vomited, Deputy Lopez contacted dispatch for a second time to notify the officers at the LEC that he

3

would be arriving with an "unruly" and "combative" person.  Id. at 60-61.  Deputy Lopez also testified that Michaud banged his head against the plexiglass divider more than two times during the drive to the LEC.  Id. at 72-73.  Deputy Lopez claims that Michaud hit his head hard enough to create an echo effect in the front portion of the squad car.  Id. at 74.

Michaud paints a very different picture of the events that occurred as Deputy Lopez transported him to the LEC.  According to Michaud, he did not intentionally throw up on Deputy Lopez, did not say "How do you like that, you pig motherfucker?," and did not bang his head against the plexiglass divider.  Michaud Dep. at 223-24, 229, 231.

There were at least six correctional officers waiting when Deputy Lopez arrived at the LEC with Michaud.  Id. at 85.  Upon arriving at the LEC, Deputy Lopez parked his squad car in the sally port area.  Id. at 81.  After getting out of his squad car, Deputy Lopez opened the rear passenger door where Michaud was seated, and proceeded towards the trunk of his car so he could secure his weapon.  Id. at 82-83.  According to Deputy Lopez, Michaud did not yell at him, threaten him, or make any menacing moves towards him when he opened the rear door.  Id. at 100-101.  As he walked towards the trunk of his car, Deputy Lopez said to the correctional officers, "This guy just threw up on me."  Id. at 83.  Deputy Lopez asserts he had no physical contact with Michaud after making that statement.  Id. at 99.

It is undisputed that Michaud was dressed and seated in the backseat of Deputy Lopez's car when they arrived at the LEC, it is also undisputed that when Michaud left the LEC, he was wearing only his boxer shorts and in a transport van to Regions Medical Center ("Regions"). The manner in which Michaud's clothing was removed, and how he received the injuries that were visible when he arrived at Regions is in dispute.

Deputy Jonathan Hayden ("Deputy Hayden"), Sergeant Corey Hendrickson ("Sergeant Hendrickson"), Officer Michael E. Frank ("Officer Frank"), Officer Steven Neily ("Officer Neily"), Officer Nicolas Heininger ("Officer Heininger"), Sergeant Ginger R. Kell ("Sergeant Kell"), Deputy Michael Lehman ("Deputy Lehman"), and Deputy Anne M. Maag ("Deputy Maag"), were all present at the LEC and either observed or assisted with processing Michaud's arrest.[2]  Lehman Dep. (Kugler Aff. Ex. K) at 34; Frank Dep. (Kugler Aff. Ex. M) at 28, 33; Hayden Dep. (Kugler Aff. Ex. N) at 33; Heininger Dep. (Kugler Aff. Ex. L) at 25.  Sergeant Hendrickson, taking custody of Michaud from Deputy Lopez,  instructed Michaud to exit the squad car.  Lehman Dep. at 34.  According to Deputy Lehman, when Michaud failed to comply with Sergeant Hendrickson's command, one of the officers reached in to pull him from the car.  Id.; Frank Dep. at 28.  Because Michaud continued to struggle, the officers leaned him against the back of Deputy Lopez's squad car and attempted to pat him down.  Frank Dep. at 33; Hayden Dep. at 33.  According to Deputy Hayden, when the officers then attempted to escort Michaud to the booking area their legs intertwined and they all fell to the ground.  Hayden Dep. at 36. Deputy Lehman testified Michaud continued to struggle even when he was face down on the ground, requiring that two officers place themselves on top of Michaud's shoulders, and that Deputy Lehman controlled Michaud's legs to restrain him.  Lehman Dep. at 39.  While on the ground, the officers conducted a pat search of Michaud, removed Deputy Lopez's handcuffs, and placed Michaud in jail cuffs.  Id.  The officers then decided to take Michaud to Regions Medical Center.  Id. at 42.  Officers Neily and Heininger, Deputy Maag and Sergeant Kell escorted

---

[2]  Sergeant Kell, Deputy Lehman, and Deputy Maag are not named defendants in this case.

Michaud to the transport van to Regions.  Heininger Dep. at 25.  It is unclear when the officers

removed Michaud's clothing.

Hutchinson, who had been transported to the sally port area by Officer Demarest and was

seated in a position to view the officers handling Michaud, provides a very different account of

the events that took place at the LEC.  According to Hutchinson, Michaud was sitting quietly in

the backseat of Deputy Lopez's squad car when two officers pulled him from the car and threw

him to the ground.  Hutchinson Dep. at 46.  Hutchinson testified that a group of five officers then

removed Michaud's clothes and beat him.  Id. at 48, 54.  Hutchinson watched for approximately

two minutes as the officers slammed Michaud's face into the ground several times, removed

Michaud's clothing, and kicked and elbowed him.  Id. 55, 64, 67.  According to Hutchinson,

Michaud screamed in pain throughout the altercation but did not attempt to resist the officers.

Id. at 70.  Although Hutchinson could not identify many of the officers who allegedly assaulted

Michaud, he did identify Deputy Lopez as having kicked Michaud's right side while Michaud

was in handcuffs and lying face down on the ground.  Id. 59-60, 101.

Michaud's screams can be heard on the audio recording of the incidents in sally port area.

While Michaud was screaming in the background, Deputy Lopez approached Hutchinson, who

was sitting in the rear of Officer Demarest's vehicle, and made the following statement:

> I am letting you know; I am letting you know, I have your name, I know where
> you live.  I have his name and I know where you [sic] lives.  If anything,
> anything, happens to the Mounds View copper or sheriff's copper, do you know
> who we're gonna come looking for, you.  I hate your degenerate friend over there
> . . . You see what's going on over there, it's coming for you next.

Audio Recording at time stamps 34.51-35.20.  Deputy Lopez explains that he made that

statement to Hutchinson because Hutchinson had threatened to kill him and he wanted to make

Hutchinson aware that if anything happened to a Mounds View officer or Ramsey County deputy, he would pursue Hutchinson as a suspect.  Lopez Dep. at 121-28.  With regard to the last clause ("You see what's going on over there, it's coming for you next"), Deputy Lopez testified the statement was to warn Hutchinson that if he resisted the officers and was combative, they were going to escort him to the booking area.  Id. at 129.  Deputy Lopez further explained that in making that statement to Hutchinson he intended to convey to him that if he raised the level of force on the officers, they would raise their level of force in order to keep him under control.  Id.

At Regions Hospital in St. Paul, Minnesota, doctors performed an examination and determined Michaud had scrapes on his neck and body, a black eye, swelling on the outer portion of his ear, and head trauma ("subdural hematoma that is acute that is at the left frontal convexity").  Michaud Hospital Records (Kugler Aff. Ex. B).  A breathalyzer test given to Michaud at the hospital revealed that his blood alcohol content was 0.12.  Id.

## III.  DISCUSSION

Michaud has voluntarily dismissed Defendants City of Mounds View and Officer Demarest and several of the claims asserted in his Complaint [Docket Nos. 1, 18].  The claims that remain are Michaud's claim that Deputy Lopez and the Deputy Defendants violated his constitutional rights in violation of 42 U.S.C. § 1983 and state law claims against Deputy Lopez and the Deputy Defendants of assault and battery and intentional infliction of emotional distress.  Michaud also asserts a claim that the County is vicariously liable**.**  Deputy Lopez and the Deputy Defendants assert they are entitled to qualified immunity on Michaud's § 1983 claim and official immunity on his state law claims.  Deputy Lopez and the Deputy Defendants assert that they are

entitled to summary judgment on Michaud's claims even if they are not protected by qualified and official immunity.

## A.      Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## B.      42 U.S.C. § 1983 Claims

Michaud asserts that Deputy Lopez and the Deputy Defendants acted under color of state law to deprive him of his rights by "committing acts in violation of the Fourth and Fourteenth Amendments' protection against unreasonable stops, detentions, searches, seizures, and arrests and the Fourteenth Amendment guarantees of life, liberty and property, by using excessive and unreasonable force against" him. Compl. ¶ 20. Michaud also asserts Deputy Lopez and the Deputy Defendants violated his rights under the Fourth and Fourteenth Amendments by "knowingly and intentionally allowing [him] to be beaten and tortured by deputies and officers acting in the course and scope of their official capacity and while under cover of state law." Id.

Deputy Lopez and the Deputy Defendants assert they are protected by the doctrine of qualified immunity.  In <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001), the Supreme Court clarified the standard courts must apply in conducting the qualified immunity analysis.  The first question is whether, taken in the light most favorable to the plaintiff, the facts alleged show the officer's conduct violated a constitutional right.  <u>Id.</u> at 201.  If the answer to the first question in the qualified immunity analysis is yes, then the second question is whether the constitutional right at issue was clearly established.  <u>Id.</u>  "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law."  <u>Greiner v. City of Champlin</u>, 27 F.3d 1346, 1352 (8th Cir. 1994).  Where the defendant officers did not violate a constitutional right, or violated a right that was not clearly established, then they are protected by qualified immunity and entitled not to stand trial.  <u>Saucier</u>, 533 U.S. at 200-01.

**1.      Deputy Defendants**

The Deputy Defendants assert they are entitled to qualified immunity because they did not violate Michaud's constitutional rights.  They argue Michaud has failed to establish an excessive force claim because there is "no evidence of a particular officer causing injury or a particular officer failing to stop preventable harm caused by other officers."  Deputy Defs.' Mem. in Supp. of Mot. for Summ. J. [Docket No. 55] at 25.  The Deputy Defendants contend that because Michaud cannot establish which of the officers allegedly assaulted him, he has failed to set forth sufficient evidence for a § 1983 claim.

Although the Deputy Defendants are correct in that Michaud has not identified which, if any, of the Deputy Defendants assaulted him, the deposition testimony of several of the Deputy Defendants is that Deputy Hayden, Sergeant Hendrickson, Officer Frank, Officer Neily, and

Officer Heininger either assisted in processing Michaud's arrest or were present in the LEC to witness the alleged use of excessive force.  This evidence is sufficient to establish a claim against those defendants for the purposes of summary judgment.  See Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000) (finding that evidence that the officers participated in or witnessed the alleged use of excessive force was sufficient for a § 1983 claim to survive summary judgment even though the plaintiff could not identify which of the officers actually assaulted him); see also Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir. 1986) (holding that summary judgment was not proper in § 1983 case where the plaintiff identified the defendants as being in the group of officers that allegedly assaulted him and where the officers admitted to being among the group that arrested, detained, and handcuffed the plaintiff, even though the plaintiff could not specifically state whether the defendants assaulted him).  Law enforcement officers have an affirmative duty to intervene on behalf of individuals whose constitutional rights are being violated in their presence by other law enforcement officers.  Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981).  Because of that duty, law enforcement officers may be held liable for the use of excessive force even where they had no physical contact with the individual.

Taking the facts in the light most favorable to Michaud, the Court is required to accept Hutchinson's testimony that the officers used excessive force against Michaud by slamming his face into the ground, kicking, and elbowing him.  Deposition testimony of several of the Defendants places the above-listed Defendants at the scene and there is evidence of some of the Defendants having physical contact with Michaud.  Michaud's inability to identify which of the Deputy Defendants assaulted him does not entitle the Deputy Defendants to summary judgment

because "whichever officer was not directly responsible for the beating was idly standing by." Miller, 220 F.3d at 395.

However, with respect to Defendants Steven Engstrom, David Kernal, William (Bill) Burkhart, Joseph Kubisewski, Noah LaBathe, Norman Thurmer, Reed Rediske, Duane Renville, Neil Iverson, John Doe, Jim Doe, and Fred Doe, Michaud has failed to set forth any evidence demonstrating that they either participated in or witnessed the events at the LEC. Because all of Michaud's claims are premised on the involvement in or witnessing of the events in the sally port of the LEC, and because Michaud has failed to set forth any evidence placing these Defendants in the LEC, they are entitled to summary judgment on all of Michaud's claims and are dismissed from this lawsuit.

The Deputy Defendants next argue they are entitled to qualified immunity because the force they used was reasonable under the circumstances. In analyzing an excessive force claim, whether the Deputy Defendants actions were objectively reasonable in light of the facts and circumstances confronting them must be assessed without regard to their underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989). To determine whether the force used to effect Michaud's arrest was reasonable under the Fourth Amendment, the Court is required to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal citation and quotation marks omitted). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. Courts are to consider all the facts and circumstances of the particular case, "including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

Taking the facts in the light most favorable to Michaud, he was not resisting the officers yet the applied force included kicking and beating him while he was lying face down on the ground with his hands cuffed behind his back.  That amount of force was not reasonable, however, this determination does not end the inquiry.  The Deputy Defendants contend that they are still entitled to qualified immunity because any injuries Michaud sustained were *de minimus* and cannot support a claim of excessive force.  The Deputy Defendants contend that a claim of excessive force requires evidence of a more permanent injury.

To support a claim of excessive force under the Fourth Amendment, the plaintiff must come forward with evidence of an actual injury.  Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005).  Evidence of bruising, facial lacerations, and transport to the hospital by ambulance, have been found by the Eighth Circuit to sufficiently establish the requisite injury in an excessive force claim.  See Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995) (finding that bruises and facial lacerations constituted actual injuries); Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) (citing Dawkins and holding that a small cut on the plaintiff's eyelid and scrapes on her knees and legs constituted actual injuries).  Proof of a more permanent injury is required in cases where the asserted injury arises from handcuff use.  The Eighth Circuit has made the distinction, requiring a heightened level of injury in handcuffing cases, because of its conclusion that handcuffing "inevitably involves some use of force."  Wertish v. Krueger, 433 F.3d 1062,

12

1067 (8th Cir. 2006) (finding that "because some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries"). Here Michaud has presented evidence that he suffered a black eye, a swollen ear, and, most significantly, head trauma. These injuries are sufficient to support Michaud's claim of excessive force.

Taking the facts in the light most favorable to Michaud, he has set forth sufficient evidence to support his claim that the Deputy Defendants violated his constitutional rights by using excessive force. Having found a violation of a constitutional right, the next question then is whether the right at issue was clearly established. To determine whether a particular right was clearly established, it must be viewed in a particularized, relevant sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citation omitted). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id. at 741. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Again, taking the facts in the light most favorable to Michaud, the officers used extreme force against a restrained and compliant individual. No reasonable officer would believe that

conduct was lawful.  Accordingly, the constitutional right at issue in this case was clearly

established and the Deputy Defendants are not entitled to qualified immunity or summary

judgment on Michaud's § 1983 claim.

>    **2.    Deputy Lopez**

Deputy Lopez argues he is entitled to qualified immunity and summary judgment on

Michaud's § 1983 claim because he contends Michaud has failed to come forward with any

evidence that he used excessive force against him.  However, recognizing that Michaud has

offered Hutchinson's testimony that Deputy Lopez kicked Michaud in the side of his torso,

Deputy Lopez also argues that he is still entitled to summary judgment because Michaud has

presented no evidence of an actual injury arising from Deputy Lopez's alleged kick to his flank.

As to Michaud's claim that Deputy Lopez is liable for failing to intervene while the other officer

used excessive force, Deputy Lopez asserts he is entitled to qualified immunity and summary

judgment because Michaud has presented no evidence that he had an opportunity or ability to

intervene.

Taking the facts in the light most favorable to Michaud, Deputy Lopez kicked his side

while he was lying on the ground with his hands cuffed behind his back.  However, Michaud has

not provided any evidence demonstrating that he suffered from an injury as a result of Deputy

Lopez's actions.  The photographs documenting Michaud's injuries depict images of his right

shoulder, and his face and ear—there are no photographs showing any injuries to his torso.

Further, the medical report from Michaud's visit to Regions' emergency room immediately

following the incident details injuries to Michaud's face, eye, ear, brain, wrists, neck, and

shoulder, but no reports of bruising on Michaud's torso or injuries related to the alleged kick.

Although Michaud has failed to present any evidence demonstrating that Deputy Lopez used excessive force against him resulting in an actual injury, he has set forth sufficient evidence to defeat summary judgment on his failure to intervene claim. The statement Deputy Lopez made to Hutchinson while he was seated in the back of Officer Demarest's squad car at the LEC, would allow a reasonable jury to infer that Deputy Lopez witnessed the alleged use of excessive force and stood idly by in violation of his duty to intervene. The duty to intervene applies equally where the witnessing officer is in a supervisory or nonsupervisory position. Putman, 639 F.2d at 423. On the audio recording of the incidents at the LEC, Deputy Lopez can be heard confronting Hutchinson while Michaud is screaming in the background, allegedly because he was being beaten by other officers. Further, the following statement: "You see what's going on over there, it's coming for you next," can be viewed as evidence that Deputy Lopez saw what was happening to Michaud while it was happening and failed to intervene. See Id. at 424 (indicating that evidence that the defendant officer did not see the alleged use of excessive force or did not have time to reach the plaintiff would be evidence of an inability to intervene).

Having determined that Michaud has created a genuine issue for trial regarding whether Deputy Lopez violated his right to be free from excessive force by failing to intervene, the second question in the qualified immunity analysis requires a determination of whether Deputy Lopez violated a known right. The right to be free from excessive force and the duty imposed on law enforcement officers to intervene to prevent the violation of that right by their fellow officers were clearly established at the time of the incident at the LEC. Putman, 639 F.2d at 423. A reasonable officer would have known that it was a violation of Michaud's constitutional rights

to stand by while other officers used excessive force against him.  Accordingly, Deputy Lopez is not entitled to qualified immunity or summary judgment on Michaud's § 1983 claim.

## C.      State Law Tort Claims

### 1.      Assault and Battery

Under Minnesota law, to establish a claim of assault and battery against an on-duty officer a plaintiff must demonstrate that the officer used excessive force to effectuate the arrest. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980).  As previously discussed, Michaud has set forth sufficient facts to create a genuine issue for trial regarding whether the Deputy Defendants and Deputy Lopez used excessive force against him.  Accordingly, summary judgment is not proper on this claim.

### 2.      Intentional Infliction of Emotional Distress

Under Minnesota law, a claim of intentional infliction of emotional distress requires proof of four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003).  Regarding the fourth element, severe emotional distress is defined as distress "so severe that no reasonable man could be expected to endure it." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983) (internal quotation omitted).

Michaud has failed to provide any evidence that he suffers from emotional distress so severe that "no reasonable man could be expected to endure it." Id.  Accordingly, both the Deputy Defendants and Deputy Lopez are entitled to summary judgment on this claim.

3.      **Official Immunity and Vicarious Liability**

Having found that Michaud has set forth a genuine issue of fact on whether the Deputy

Defendants and Deputy Lopez committed assault and battery, the next issue is whether they are

entitled to official immunity.  "[U]nder Minnesota law, a public official is entitled to official

immunity from state law claims when that official is charged by law with duties that require the

exercise of judgment or discretion.  Generally, police officers are classified as discretionary

officers entitled to that immunity." Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990)

(internal cites omitted); see Maras v. Brainerd, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993).

However, conduct is not immune from liability if the public official "is guilty of a wilful or

malicious wrong." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991).  "Malice is 'the

intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the

willful violation of a known right.'" Samuelson v. City of New Ulm, 455 F.3d 871, 878 (8th Cir.

2006) (quoting Carnes v. St. Paul Union Stockyards Co., 205 N.W. 630, 631 (Minn. 1925)).  "In

general, when a public official is found to be immune from suit on a particular issue, his

government employer will enjoy vicarious official immunity from a suit arising from the

employee's conduct." Schroeder v. St. Louis County, 708 N.W.2d 497, 508 (Minn. 2006).

The Deputy Defendants and Deputy Lopez were performing a discretionary act when

they assisted with processing Michaud's arrest. See Wiederhold v. City of Minneapolis, 581

N.W.2d 312, 315 (Minn. 1998) (explaining that discretionary acts are those involving

professional judgment based on the specific "factors of a situation").  However, they are not

entitled to official immunity because there is a genuine issue regarding whether they are "guilty

of a wilful or malicious wrong." Rico, 472 N.W.2d at 107.  Taking the facts in the light most

17

favorable to Michaud, the officers either actively participated in smashing his face into the ground, kicking, and elbowing him (while he was restrained and compliant) or failed to intervene while fellow officers used excessive force.  Based on these facts a reasonable jury could conclude that the Deputy Defendants and Deputy Lopez acted maliciously.  Because the Deputy Defendants and Deputy Lopez are not entitled to official immunity, Ramsey County is not protected by the doctrine of vicarious official immunity.  See Mumm v. Mornson, 708 N.W.2d 475, 493 (Minn. 2006) (holding that the City of Minneapolis was not entitled to vicarious official immunity because the officers did not have official immunity).

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1.  Defendant Deputy Sheriff J. Lopez's Motion for Summary Judgment [Docket No. 46] is **DENIED** on Plaintiff John L. Michaud's ("Michaud") 42 U.S.C. § 1983 claim and Michaud's claim of assault and battery but **GRANTED** on Michaud's claim of intentional infliction of emotional distress;

2.  Defendants Steven Engstrom, David Kernal, William (Bill) Burkhart, Joseph Kubisewski, Noah LaBathe, Norman Thurmer, Reed Rediske, Duane Renville, Neil Iverson, John Doe, Jim Doe, and Fred Doe's Motion for Summary Judgment [Docket No. 48] is **GRANTED** on all of Michaud's claims and they are dismissed from this lawsuit;

3.  Deputies Adam Moore, Jonathan Hayden, Steven Neily, Nicolas Heininger, Michael Frank, and Corey Hendrickson's Motion for Summary Judgment [Docket No. 48] is **DENIED** as to Michaud's § 1983 claim and Michaud's claim of assault and battery but **GRANTED** on Michaud's claim of intentional infliction of emotional distress; and

4.  Defendant Ramsey County's Motion for Summary Judgment [Docket No. 48] on Michaud's claim of vicarious liability is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 26, 2008.